## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RENEE LEMPKE, Individually and as the Executrix of the Estate of ROBERT LEMPKE, deceased<br><br>Plaintiff,<br><br>v.<br><br>GENERAL ELECTRIC, CO., et al.,<br><br>Defendants. | CIVIL ACTION<br><br>No. 10-5380 |

| | |
|---|---|
| RENEE LEMPKE, Individually and as the Executrix of the Estate of ROBERT LEMPKE, deceased<br><br>Plaintiff,<br><br>v.<br><br>A.B. CHANCE CO., et al.,<br><br>Defendants. | CIVIL ACTION<br><br>No. 10-5426 |

## <u>MEMORANDUM</u>

These diversity actions arise from the electrocution death of Robert Lempke.  The defendants have now moved, pursuant to 28 U.S.C. § 1404(a), to transfer the venue of this action to the Western District of Pennsylvania, where Mr. Lempke's death occurred. For the following reasons, defendants' motions will be granted.

I.      **Background**

On September 16, 2008, Mr. Lempke, a utility worker, suffered catastrophic

injuries and death after contacting a downed power-line conductor during a relief effort to

restore power in western Pennsylvania.  Thereafter, plaintiff Renee Lempke, Robert's

widow, acting individually and as the executrix of Robert's estate, initiated four actions in

the Philadelphia Court of Common Pleas.  Two of those actions were removed to this

court on diversity grounds.  On June 15, 2011, this court denied plaintiff's motion to

remand the two removed actions to state court.  *See* No. 10-5380, Docket No. 67; No. 10-

5426, Docket No. 60.[1]  The two other actions were consolidated by the Philadelphia Court

of Common Pleas and remain pending as of the date of this memorandum.  *See id.* at 5.

On May 24, 2011, the Court of Common Pleas denied a motion by the state court

defendants to transfer venue based on forum non conveniens.  *See Lempke v. Massing*,

No. 1524, Case ID 100901524 (Philadelphia Cnty. Court of Common Pleas).

Plaintiff's complaint in civil action No. 10-5380 asserts claims against A.B.

Chance Company ("Hubbell"[2]); Cooper Bussmann, LLC; Cooper Bussman, Inc.; Cooper

Industries, Inc.; Cooper Power Systems, Inc. (collectively, "the Cooper defendants"),

---

[1] For convenience, all citations in this opinion to the docket in *Lempke v. A.B. Chance Co.*, No. 10-cv-5380 will take the form "No. 10-5380, Docket No. X."  Similarly, all citations to the docket in *Lempke v. General Electric Co.*, No. 10-cv-5426, will take the form "No. 10-5426, Docket No. X."

[2] Plaintiff's complaint in civil action No. 10-5380 named "A.B. Chance Company" as a defendant.  A.B. Chance is in fact a division of Hubbell Power Systems, Inc. ("Hubbell").  Hubbell was also named as a defendant in civil-action No. 10-5426.

alleging that the were manufacturers of components including fuses and re-closers that failed to properly interrupt current flow and protect Mr. Lempke on September 16, 2008. *See* No. 10-5380, Docket No. 12, Mem. at 2.[3]   Plaintiff's complaint in civil action No. 10-5426 alleges that General Electric Company ("General Electric"), GE Industrial Systems/Solutions a/k/a GE Electrical Distributions & Control ("GE Industrial Solutions"[4]), and Schweitzer Engineering Laboratories ("Schweitzer") were manufacturers of circuit breakers and a relay related to the power line that Mr. Lempke contacted, and that the circuit breakers and relay failed to properly interrupt current flow and protect Mr. Lempke.

Plaintiff Renee Lempke is a resident of Columbia, New Jersey, as was Mr. Lempke prior to his death.  The defendants are domiciled in New York (General Electric Company), Iowa (GE Industrial Solutions), Washington (Schweitzer), Connecticut (Hubbell), and Wisconsin (the Cooper defendants).  *See* No. 10-5380, Docket No. 46, Mem. at 2.[5]  Mr. Lempke's death occurred in Delaware Township, Mercer County,

---

[3] Two other defendants—Osmose Utilities Services, Inc. and S&C Electric Company—were also named in the complaint, but have subsequently been dismissed without prejudice from this action by stipulation of the parties.

[4] Plaintiff's complaint in civil action No. 10-5426 named "GE Industrial Systems/Solutions a/k/a GE Electrical Distributions & Control" as a defendant.  The correct name for this defendant is GE Industrial Solutions.

[5] The court notes that there is an unexplained discrepancy between certain defendants' domiciles as asserted in their motions to transfer venue and their citizenships as set forth in their notices of removal.  *See* No. 10-5380, Docket No. 1 (notice of removal stating that Hubbell is a citizen of Missouri and that the Cooper defendants are

3

Pennsylvania, which is located in the Western District of Pennsylvania.

Defendants General Electric Company, GE Industrial Solutions, and Hubbell filed motions on March 4, 2011 to transfer these actions to the Western District pursuant to 28 U.S.C. § 1404(a).  *See* No. 10-5380, Docket No. 46; No. 10-5426, Docket No. 35.  All of the other defendants in these actions have consented to the transfer motions.  Plaintiff opposes defendants' motions.

II.   **Analysis**

A.   **Section 1404(a) Standard**

If plaintiff had begun these diversity actions in federal court, venue in this district would have been improper, because none of the defendants reside in Pennsylvania, and none of the alleged acts or omissions giving rise to Mr. Lempke's death occurred in this district, while a "substantial part of the events or omissions giving rise to the claim occurred" in the Western District.  *See* 28 U.S.C. § 1391(a) (providing that diversity actions may generally "be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a

_____

citizens of Texas); No 10-5426, Docket No. 1 (notice of removal stating that GE Industrial Solutions is a New York corporation with its principal place of business in Delaware and that Hubbell is a Delaware corporation with its principal place of business in South Carolina).  Because it is undisputed that none of the defendants hale from Pennsylvania, the court's analysis of venue presented below would not change even if the notices of removal were correct, and the motions incorrect.

substantial part of property that is the subject of the action is situated, or (3) a judicial

district in which any defendant is subject to personal jurisdiction at the time the action is

commenced, if there is no district in which the action may otherwise be brought.")

However, these actions began in state court and were removed to this court by the

defendants.  Under 28 U.S.C. § 1441, an action brought in state court over which the

federal district courts have subject matter jurisdiction may be removed to "the district and

division embracing the place where such action is pending."  As a result, venue in this

district, which encompasses the Philadelphia Court of Common Pleas, is proper.  *See*

*Polizzi v. Cowles Magazines, Inc.*, 345 U.S. 663, 665-66 (1953); 14C Charles Alan

Wright et al., *Federal Practice & Procedure* § 3732 (4th ed. 2009) (noting that the

general venue statutes, including 28 U.S.C. § 1391, "do not apply to cases that have been

initiated in a state court and removed to a federal court").

Even though venue is proper in this district, these actions may still be transferred

to another venue pursuant to 28 U.S.C. § 1404(a), which provides that "[f]or the

convenience of parties and witnesses, in the interest of justice, a district court may

transfer any civil action to any other district or division where it might have been

brought."  *See Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 878 (3d Cir. 1995) ("Section

1404(a) provides for the transfer of a case where both the original and the requested

venue are proper.").

Section 1404(a) vests "discretion in the district court to adjudicate motions for

transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964)); *see also White v. ABCO Eng'g Corp.*, 199 F.3d 140, 143 (3d Cir. 1999).  In ruling on § 1404(a) motions, "courts have not limited their consideration to the three enumerated factors in § 1404(a) (convenience of parties, convenience of witnesses, or interests of justice)" but have instead "'consider[ed] all relevant factors to determine whether on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum.'" *Jumara*, 55 F.3d at 879 (quoting 15 Charles A. Wright et al., *Federal Practice & Procedure* § 3848 (2d ed. 1986)).  Although there is no definitive list of the factors that must be considered, courts commonly consider a range of both private and public interests protected by § 1404(a).  *Id.*

Such private interests include (1) the plaintiff's forum preference as manifested in the original choice; (2) the defendant's preference; (3) whether the claim arose elsewhere; (4) the convenience of the parties as indicated by their relative physical and financial condition; (5) the convenience of the witnesses, but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and (6) the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum).  *See id.* (citations omitted); *TriState HVAC Equip., LLP v. Big Belly Solar, Inc.*, 752 F. Supp. 2d 517, 537-38 (E.D. Pa. 2010).

Public interests that may be relevant to the § 1404(a) determination include (7) the enforceability of the judgment, (8) practical considerations that could make the trial easy, expeditious, or inexpensive, (9) the relative administrative difficulty in the two fora resulting from court congestion, (10) the local interest in deciding local controversies at home, (11) the public policies of the fora, and (12) the familiarity of the trial judge with the applicable state law in diversity cases. *See Jumara*, 55 F.3d at 879-80; *TriState HVAC Equip.*, 752 F. Supp. 2d at 538.

The "burden of establishing the need for transfer . . . rests with the movant." *Jumara*, 55 F.3d at 879 (citations omitted). Although the decision to transfer "'is in the court's discretion, . . . a transfer is not to be liberally granted.'" *Yocham v. Novartis Pharm. Corp.*, 565 F. Supp. 2d 554, 557 (D.N.J. 2008) (quoting *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970)).

**B.    Application of the Section 1404(a) Factors**

Defendants argue that § 1404(a) favors the transfer of these actions to the Western District of Pennsylvania, where Mr. Lempke's death occurred. Plaintiff has not contested that these actions "might have been brought" in the Western District, *see* 28 U.S.C. § 1404(a), but has instead argued that defendant has failed to meet its burden of showing that the § 1404(a) factors favor transfer.

1.    The Plaintiff's and Defendants' Forum Preferences

With respect to the first factor, the plaintiff's choice of forum, it has traditionally

been recognized that "a plaintiff's choice of a proper forum is a paramount consideration in any determination of a transfer request, and that choice should not be lightly disturbed." *Shutte*, 431 F.2d at 25 (internal quotation omitted).  However, it is also well established that a plaintiff's choice of forum "is not always controlling; otherwise Section 1404(a) would be meaningless." *Bartolacci v. Church of Jesus Christ of Latter Day Saints*, 476 F. Supp. 381, 383 (E.D. Pa. 1979).  Where the "Plaintiff chooses a forum other than her state of residence, her choice is given less weight."  *Weber v. Basic Comfort, Inc.*, 155 F. Supp. 2d 283, 285 (E.D. Pa. 2001); *see also Washington v. Tank Industry Consultants, Inc.*, 2008 WL 4916038, at *4 (E.D. Pa. 2008); *American Littoral Soc. v. EPA*, 943 F. Supp. 548, 551 (E.D. Pa. 1996).  Similarly, "the plaintiffs' choice is given less deference where . . . none of the operative facts occurred" in the forum.  *White v. SmithKline Beecham Corp.*, 2007 WL 1237952, at *2 (E.D. Pa. 2007); *McMillan v. Weeks Marine, Inc.*, 2002 WL 32107617, at *1 (E.D. Pa. 2002).

It is undisputed that plaintiff does not live in this district, and that none of the operative facts giving rise to Mr. Lempke's death occurred in this district.  Instead, plaintiff lives in New Jersey, and the operative facts in this negligence and products liability action occurred in the Western District of Pennsylvania and in the various districts in which the defendants manufactured their electrical products.  Accordingly, while the first factor favors plaintiff, it is entitled to "considerably less weight" than would ordinarily be the case.  *Kielczynski v. Consol. Rail Corp.*, 837 F. Supp. 687, 689

(E.D. Pa. 1993) (citations omitted).

      Moreover, as one commentator has noted, some courts have found that "deference to a plaintiff's forum choice is lessened when the plaintiff originally had filed suit in a state court and the case was only in the district court following removal." 15 Charles Alan Wright et al., *Federal Practice & Procedure* § 3848 (3d ed. 2007); *see also Silver Knight Sales & Marketing, Ltd. v. Globex Int'l, Inc.*, 2006 WL 3230770, at *4 (S.D. Ohio 2006). While the court is reluctant to embrace this broad proposition as a general matter, it finds that when, as in the present cases, diversity actions are removed to a venue in which they could not originally have been brought under 28 U.S.C. § 1391(a), the plaintiff's choice should receive less deference because the plaintiff could never have actually chosen to litigate in that federal court, and is only in that court by virtue of the defendant's act of removal.

      The second factor, the defendant's forum preference, is "entitled to 'considerably less' weight than the plaintiff's." *Conroy v. Penn. Turnpike Comm'n*, 2011 WL 578779, at *2 (W.D. Pa. 2011) (quoting *Penn Mut. Life Ins. Co. v. BNC Nat'l Bank*, 2010 WL 3489386, at *8 (2010)). The court notes that none of the defendants reside in the Western District of Pennsylvania. Thus, just as the plaintiff's choice of this forum is entitled to less deference because plaintiff does not reside here, the court finds that defendants' choice of the Western District is entitled to even less weight than it typically would receive.

2.     Whether the Claims Arose Elsewhere

Neither party suggests that plaintiff's claims arose in this district.  Mr. Lempke's death occurred in western Pennsylvania when he contacted a downed power-line conductor during a relief effort.  *See Ryle v. NES Rentals*, 2004 WL 2609121, at *1 (E.D. Pa. 2004) (granting transfer from Eastern District of Pennsylvania to Middle District where, among other things, "the accident at issue occurred in the Middle District"). Accordingly, defendants argue that the claim in these actions arose in the Western District, and that this factor weighs in favor of transfer.

In her opposition, plaintiff argues that "[p]roduct liability actions generally do not have a single 'situs,' and therefore the fact that an injury occurred at one location is not a finding that compels transfer to that location."  *See* No. 10-5380, Docket No. 53, at 9.  As support for this decision, plaintiff cites several decisions from other districts.  *See, e.g.*, *Brown v. Kia Motors Corp.*, 2007 WL 539652, at *3 (W.D. Pa. 2007) ("[T]his is a product liability action. Consequently, this claim does not have a single 'situs.'"); *Duvall v. Avco Corp.*, 2006 WL 723484, at *2 (M.D. Pa. 2006) ("[T]he claims asserted against the Defendants are of a product liability nature, therefore the physical location of the accident carries less weight than the Defendants assert.").

The court does not disagree that in many products liability cases, such as those cited above, the location of the accident will be relatively unimportant for venue purposes.  However, the record in these actions suggests that the site of Mr. Lempke's

10

death is likely to be particularly important as this litigation proceeds. Plaintiff alleges that her husband's electrocution occurred because fuses, re-closers and circuit breakers within the electrical distribution grid in Delaware Township, Pennsylvania failed to properly perform and protect her husband. The defendants have asserted various defenses, including comparative negligence, assumption of the risk, actual and proximate causation, and the superceding negligence of third parties. *See, e.g.*, No 10-cv-5426, Docket No. 13, at 21-24 (answer of defendant Schweitzer, asserting these and other defenses). Thus, it appears that much of this litigation will focus not only upon whether particular electrical products were defective, but also upon how the electrical distribution grid functioned as a system, as well as what specific conduct occurred during the relief efforts to restore power. In addition, the litigation may focus upon the particular features of the land where Mr. Lempke's death occurred.[6] All of this suggests that the location of the accident is likely to be a particular focus of these actions, unlike some of the product liability precedents cited by plaintiff. *Cf. Brown*, 2007 WL 539652, at *1 (product liability action alleging that automobile, as manufactured, was not crash worthy because of a defect in the passenger restraint system and the lack of laminated safety glass).

---

[6] In this connection, the court notes that plaintiff is currently maintaining an action in the Philadelphia Court of Common Pleas which alleges that the owner of the land where the utility pole was located failed to properly maintain the vegetation on the property. *See* No. 10-5380, Docket No. 12, Mem. at 4.

11

Accordingly, the court finds that this factor weighs significantly in favor of transfer.

### 3.    The Convenience of the Witnesses

As the Third Circuit noted in *Jumara*, in ruling on § 1404(a) motions courts have considered "the convenience of the witnesses—but only to the extent that the witnesses may actually be unavailable for trial in one of the fora." 55 F.3d at 879 (citation omitted). The convenience of witnesses is "[o]ften cited as the most important factor in passing on a motion to transfer under Section 1404(a) . . . and the one most frequently mentioned by the courts." 15 Charles Alan Wright et al., *Federal Practice & Procedure* § 3848 (3d ed. 2007); *see also Headon v. Colo. Boys Ranch*, 2005 WL 1126962, at *7 (E.D.Pa. May 5, 2005) (noting that convenience of non-party witnesses is "perhaps the most important factor").

When considering the convenience of witnesses, "the focus is on non-party witnesses, since 'party witnesses are presumed to be willing to testify in either forum despite any inconvenience.'" *TriState HVAC Equip.*, 752 F. Supp. 2d at 539 (quoting *Hillard v. Guidant Corp.*, 76 F. Supp. 2d 566, 570 (M.D. Pa. 1999)); *see also Affymetrix, Inc. v. Synteni, Inc.*, 28 F. Supp. 2d 192, 203 (D. Del. 1998). The burden is on the defendants to demonstrate that nonparty witnesses may be unavailable for trial. *Brenner v. Consol. Rail Corp.*, 2009 WL 2710241, at *3 (E.D. Pa. 2009). In evaluating the convenience of the witnesses, the court must consider not only the sheer number of

12

proposed witnesses, but also their relative importance.  *Lucent Techs., Inc. v. Aspect Telecomm. Corp.*, 1997 WL 476356, at *5 (E.D. Pa. 1997).

      As the defendants note, several important non-party fact witnesses located in or near western Pennsylvania have filed affidavits in the related state court actions.  These affidavits state that attending trial in Philadelphia would be "oppressive and vexatious," create "personal hardship," or represent "a significant burden" for the witnesses due to their personal and work responsibilities, the distance between their homes and Philadelphia, and the time and expense of travel to Philadelphia.  *See* 10-5426, Docket No. 54, Exs. A-G.  Two of the affidavits were filed by state troopers who responded to the scene of Mr. Lempke's death, one of whom conducted the investigation of the death and authored a police report that described the incident and identified relevant witnesses. *See id.* at Exs. A, B.  Both troopers live in Mercer County, which is located in the Western District of Pennsylvania.  *See id.*   Two other affidavits were filed by the fire chief of Fredonia, Pennsylvania, who responded to the scene, and by the coroner who examined Mr. Lempke after his death.  Both live in Mercer County.  *See id.* at Exs. C, D. An affidavit was also filed by Keith Massing, who is one of the defendants in the state court actions.  Massing, who also lives in Mercer County, owns land where the accident occurred and allegedly failed to properly maintain the vegetation on his property, resulting in Mr. Lempke's death.  *See id.* at G.  Finally, affidavits were filed by Brian Lee and Tony Napoli, employees of Nelson's Tree Service, Inc. who were working with Mr.

13

Lempke to assist with power restoration at the time of his death.  Lee and Napoli both live in Ashtabula County, Ohio, and would each have to travel over 350 miles to attend trial in Philadelphia.  *Id.* at F.

These affidavits demonstrate that important non-party witnesses would likely be unavailable for trial in Philadelphia.  The two Nelson's Tree Services witnesses in Ohio are outside this court's power to subpoena for trial, *see* Fed. R. Civ. P. 45(b)(2)(B) (permitting a subpoena to be served within 100 miles of the location of trial), and have sworn that attending trial in Philadelphia would prove burdensome to them.  While the Ohio witnesses have not specifically indicated whether they would be willing to attend trial in Pittsburgh, Pennsylvania, which is the main seat of the Western District, they have indicated a willingness to attend trial in nearby Mercer County.  Accordingly, the court finds it reasonable to infer that these witnesses would appear for a trial held in Pittsburgh.

It also appears that this court would be unable to compel the attendance of the witnesses living in Mercer County, Pennsylvania .  Rule 45(b)(2)(C) provides that "[s]ubject to Rule 45(c)(3)(A)(ii), a subpoena may be served at any place: . . . (C) within the state of the issuing court if a state statute or court rule allows service at that place of a subpoena issued by a state court of general jurisdiction sitting in the place specified for the deposition, hearing, trial, production, or inspection."  In addition, Rule 234.2 of the Pennsylvania Rules of Civil Procedure requires the prothonotary to issue a subpoena upon the request of a party and that "a copy of the subpoena may be served upon any adult

14

within the Commonwealth" in any one of several specified methods.  However, Rule

45(c)(3)(B)(iii) permits a court to quash a subpoena commanding a non-party witness to

attend trial if the subpoena will require that person to "incur substantial expense to travel

more than 100 miles to attend trial."  In this case, the Mercer County witnesses have all

sworn that attending trial in Philadelphia would cause them hardship and significant

expense.  Thus, it appears that this court would be required to quash any subpoenas

requiring the Mercer County witnesses to attend trial.

The affidavits also demonstrate that these witnesses' testimony is likely to be

important at trial.  The Nelson's Tree Services workers were both with Mr. Lempke

before and at the time of his death.  They and their employer have not been named as

defendants in any of plaintiff's various federal and state court actions.  Thus, they are

likely to provide significant—and neutral—testimony regarding the events leading up to

Mr. Lempke's death.[7]  Similarly, the police officers and fire chief who arrived at the

---

[7] With respect to neutrality, the Nelson's Tree Service workers are in a different
position from the employees of Jersey Central Power and Light ("JCP&L"), who were
also present before and during the scene of the accident.  Two JCP&L employees were
identified by name in the police report, one of whom lives in Easton, Pennsylvania, which
is within the territorial boundaries of this court and more than 100 miles from the Western
District of Pennsylvania.  The other lives in Phillipsburgh, New Jersey, which is within
100 miles of this court but more than 100 miles from the Western District.  The plaintiff
argues that this case should be kept in the Eastern District because of these two witnesses.
The court disagrees for two reasons.  First, the plaintiff has not presented any evidence
that these witnesses would be unwilling to attend trial in the Western District.  Second,
JCP&L is a defendant in the state court actions, and therefore it and, arguably, its
employees have an interest in the outcome of this action.  The court finds it appropriate to
give more weight in the venue analysis to the attendance of those witnesses whose

15

scene shortly after the accident and conducted the investigation into Mr. Lempke's death are likely to provide valuable testimony, including impeachment testimony.

For these reasons, the court finds that this factor weighs significantly in favor of transferring this action to the Western District.

4. <u>Other Factors</u>

The parties also discuss the applicability of several other factors that courts often analyze when making venue determinations. The court notes that certain of these factors weigh slightly in favor of keeping this action in the Eastern District. For example, the convenience of the parties as indicated by their relative financial conditions weighs in favor of the plaintiff, who is a widow, and against the various corporate defendants.

Similarly, given the pendency of the related state court actions in the Philadelphia Court of Common Pleas, the court notes that litigating this case in Philadelphia is likely to be somewhat more convenient for plaintiff because she and her lawyers will only be required to conduct discovery and trial here. However, the court is not inclined to give this factor great weight. The state and federal cases involve different groups of defendants and present different theories of liability. Thus, much of the discovery in the state and federal actions will not overlap, undercutting the efficiency gains of keeping the federal actions in Philadelphia. Moreover, because the two actions in this court have been properly removed, there is no prospect that these actions will be consolidated with

---

testimony is more likely to be neutral.

16

the related state court actions.  A certain amount of duplication of effort is thus inevitable in this case.  The cases cited by plaintiff in which a federal court *granted* a transfer motion in order to permit the consolidation of related actions in another *federal* forum are therefore inapposite,  *see, e.g.*, *Schiller-Pfeiffer, Inc. v. Country Home Products, Inc.*, 2004 WL 2755585, at *8-9 (E.D. Pa. 2004) ("The presence of a related case in the proposed transferee forum is a strong reason to *grant* a motion for a change of venue." (emphasis added)).  For these reasons, the court concludes that this factor weighs only weakly in favor of keeping this action here

     5. <u>Summary</u>

Having reviewed the briefing and evidence submitted by the parties, the court finds that transfer to the Western District is required.  Although certain factors, such as the plaintiff's forum preference and the plaintiff's convenience weigh weakly in favor keeping these actions here, two important factors—the location of the accident and the the convenience of witnesses—weigh much more strongly in favor of transfer.

**III. <u>Conclusion</u>**

Defendants' motions to transfer this action to the Western District of Pennsylvania will be granted.  An appropriate order follows.

17